TREG TAYLOR
ATTORNEY GENERAL

Jessica Moats Alloway
Christopher Orman
Assistant Attorneys General
Department of Law
1031 West 4th Avenue, Suite 200
Anchorage, AK  99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697
Email:   jessie.alloway@alaska.gov
         christopher.orman@alaska.gov

Attorneys for the State of Alaska

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF ALASKA,<br><br>    *Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>    *Defendants*. | Civil Action No.: 1:25-cv-00330-PLF |

## STATE OF ALASKA'S OPPOSITION TO MOTION TO STAY DEADLINES

Presumably, the Court expedited briefing on the motion to transfer so that it could resolve that dispute before addressing the State's motion for preliminary injunction. The State asks the Court to deny the motion to stay deadlines and proceed with the motion to transfer on an expedited basis. If, however, the Court is inclined to grant the Tribe's requested stay, the State asks that the Court also grant the State its conditional motion for a one-week extension to oppose the Tribe's motion to transfer.

Through this lawsuit the State of Alaska seeks to enforce a final judgment issued by this Court in 2021. [*See* Final Judgment, ECF No. 15-19] That litigation was brought by the Native Village of Eklutna to (1) overturn a 1993 Solicitor Opinion; (2) have the Court declare that the Tribe held territorial jurisdiction over the "Ondola Allotment," an Alaska Native Allotment; and (3) approve a lease from the allotment owner to the Tribe allowing it to engage in class II gaming under the Indian Gaming Regulatory Act (IGRA). [*See* Complaint, ECF No. 15-14] The State intervened in the prior litigation as a defendant to protect "its sovereign jurisdictional, regulatory, and taxing authority." [Motion to Intervene, ECF No. 15-17] After cross motions for summary judgment, the Court ruled against the Tribe and for Interior and the State on the merits. It held the Solicitor Opinion was "correct" and that "Interior applied the correct legal standard" when concluding the Native Village of Eklutna lacked territorial jurisdiction over the Ondola Allotment. *Native Village of Eklutna v. U.S. Department of the Interior*, 2021 WL 4306110, *8 (D.D.C. September 22, 2021). The Court issued final judgment on September 22, 2021, [Final Judgment, ECF No. 15-9] and the Tribe did not appeal.

Rather than appeal this Court's 2021 decision to the U.S. Court of Appeals for the District of Columbia, the Tribe instead waited for the political winds to shift. That shift occurred in February 2024, when then-Solicitor of Interior, Robert Anderson, withdrew the portion of the 1993 Solicitor Opinion that this Court previously held was correct and issued his own opinion (Anderson Opinion). [*See* ECF No. 15-2] In doing so, Anderson declined to follow this Court's decision because, in his opinion, the Court "erred in both its reasoning and its ultimate conclusion." [ECF No. 15-2, at 16] Despite the State's intervention in the prior lawsuit, Anderson did not notify the State and did not afford it any opportunity to participate in his process.

2

With the new Anderson Opinion in hand, the federal defendants raced to issue the other necessary approvals for a class II gaming facility on the Ondola Allotment before former President Biden's administration left office. Between June 2024 and January 2025, the Tribe received (1) a new "Indian lands" determination from Anderson, [*see* ECF No. 15-20] (2) a gaming ordinance from the National Indian Gaming Commission, [*id.*] (3) a finding of no significant impact from the Bureau of Indian Affairs,[1] and (4) a decision approving a lease of the allotment from the owner to the Tribe by Interior's outgoing Assistant-Secretary [ECF No. 15-21]. The Tribe began construction the weekend before President Trump took office and opened a "temporary modular building" with "several electronic gaming machines" on January 20, 2025.[2]

Less than a month later, the State filed this lawsuit, and just recently President Trump's administration announced that it was suspending for further review all opinions issued by Anderson during his tenure. [ECF No. 15-22] The overarching question raised by the State in this litigation is whether Anderson, an official within the executive branch, was bound by this Court's final judgment. Should the Court get beyond that threshold question, the issues raised in this case are identical to the issues this Court resolved in 2021: (1) was the 1993 Solicitor Opinion correct on the law; (2) does the Native Village of Eklutna have territorial jurisdiction over the Ondola Allotment; and (3) should Interior have approved a lease from the allotment owner to the Tribe so that the Tribe could engage in class II gaming?

This litigation is simply a continuation of the prior litigation filed by the Native Village of Eklutna. The prior litigation resolved the very same parties' rights to the very same parcel of

---

1    Available at https://eklutnaea.com/.
2    *See* Zachariah Hughes, *Native Village of Eklutna opens limited gambling operation at site of future casino in Birchwood*, Anchorage Daily News (Jan. 21, 2025), https://www.adn.com/alaska-news/anchorage/2025/01/21/native-village-of-eklutna-opens-limited-gambling-operation-at-site-of-future-casino-in-birchwood/ (last visited Mar. 29, 2025).

land. The only reason this litigation is necessary is because an official within the prior administration's Executive Branch did not understand that federal officials must comply with court orders. *See Committee on Judiciary of U.S. House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) ("[Courts] have long presumed that officials of the Executive Branch will adhere to the law as declared by the court. As a result, the declaratory judgment is the functional equivalent of an injunction."). As such, this litigation invokes the Court's ancillary enforcement authority. *See Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (noting that "[w]ithout jurisdiction to enforce a judgment entered by a federal court, 'the judicial power would be incomplete and entirely inadequate'") (quoting *Riggs v. Johnson Cnty.*, 73 U.S. (6 Wall.) 166, 187 (1867); *see also Kokkonen v. Guardian Life Ins. Co*, 511 U.S. 375 (1994) (explaining a federal court has ancillary jurisdiction "to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees"). The Tribe's attempt to avoid this Court's enforcement authority over its 2021 decision by arguing the Court is an improper venue and lacks personal jurisdiction over the Tribe is simply unavailing.[3]

## ARGUMENT

The State does not dispute the standards for reviewing a motion for stay as set out in the Tribe's opening brief.

The State agrees that the Court must resolve the motion to transfer before ruling on its motion for preliminary injunction. But that does not mean that briefing and consideration cannot happen simultaneously, and the Court has already indicated such by ordering the parties to brief the motion to transfer on an expedited basis.

---

[3] The State will provide a more detailed response to the Tribe's Motion to Transfer in its opposition to that motion.

Granting the stay would harm the State. When former Solicitor Anderson refused to follow the law as declared by this Court, he immediately upset the jurisdictional map of Alaska. The Tenth Circuit recognized as much in *Kansas v. United States*, 249 F.3d 1213 (10th Cir. 2001), when it considered similar issues. It stated that an "Indian lands" determination under IGRA "has a direct and immediate impact on the sovereign rights which the Miami Tribe, the Federal Government, and the State of Kansas exercise over the tract." *Id.* at 1223. As such, "the harm the State stands to suffer is irreparable if deprived of those interests without having a full and fair opportunity to be heard on the merits." *Id.* Moreover, while the Tribe is correct that on February 28, 2025 "[t]he current Administration . . . suspended the Solicitor's Opinion" that is the foundation of the harm the State has suffered, [Motion for Stay, ECF No. 20, at 9] its suspension has not caused the Tribe to stop relying on the unlawful federal approvals that resulted from that Solicitor Opinion and are now harming the State, [*see* Motion to Transfer, Dkt. 16, at 7 ("The Tribe now operates a small gaming facility on the allotment pursuant to IGRA.")]. Therefore, the harm to the State is not only irreparable, but it will also be ongoing until the Court takes action.

## CONCLUSION

Recognizing the importance of these issues, the Court has already expedited briefing on the Tribe's Motion to Transfer. Briefing on that motion and the State's Motion for Preliminary Injunction can happen simultaneously, allowing the Court to rule on the transfer request before ruling on the preliminary injunction request. The State respectfully requests that the Court deny the motion to stay. Alternatively, if the Court grants the motion for a stay, the State requests that it also grant the State's conditional motion for an extension of time.

DATED April 11, 2025.

TREG TAYLOR
ATTORNEY GENERAL

By:   /s/ *Jessica Moats Alloway*
Jessica Moats Alloway
Assistant Attorney General
Alaska Bar No. 1205045
Email: jessie.alloway@alaska.gov

By:   /s/ *Christopher F. Orman*
Christopher Orman
Assistant Attorney General
Alaska Bar No. 1011099
Email: christopher.orman@alaska.gov

*Attorneys for the State of Alaska*

**Certificate of Service**

The undersigned certifies that on April 11, 2025, a copy of the foregoing document was served via ECF on:

Colin Cloud Hampson
champson@sonoskysd.com

Amanda Eubanks
Amanda.Eubanks@usdoj.gov

/s/ Jessica M. Alloway
Jessica M. Alloway